1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF WASHINGTON

7    KENNETH JOHN WILDER,

                                                NO:  12-CV-0144-TOR
8                              Plaintiff,

                                                ORDER GRANTING DEFENDANT'S
9         v.                                    MOTION FOR SUMMARY
                                                JUDGMENT
10   MICHAEL J. ASTRUE, Commissioner
     of Social Security Administration,
11
                               Defendant.
12

13        BEFORE THE COURT are the parties' cross motions for summary

14   judgment, ECF Nos. 14 and 16.  Plaintiff is represented by Maureen J. Rosette.

15   Defendant is represented by L. Jamala Edwards.  The Court has reviewed the

16   administrative record and the parties' completed briefing and is fully informed.

17   There being no reason to delay a decision, the hearing set for January 10, 2014, is

18   vacated and this matter is submitted without oral argument.

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1    Kenneth John Wilder seeks judicial review of the Commissioner's final

2    decision denying him Title II Disability Insurance Benefits and Title XVI

3    Supplemental Security Income.

4                                JURISDICTION

5    The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

6    1383(c)(3).

7                              STANDARD OF REVIEW

8    A district court's review of a final decision of the Commissioner of Social

9    Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

10    limited: the Commissioner's decision will be disturbed "only if it is not supported

11    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 688 F.3d 1144,

12    1149 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

13    relevant evidence that "a reasonable mind might accept as adequate to support a

14    conclusion."  *Id.* (quotation and citation omitted).  Stated differently, substantial

15    evidence equates to "more than a mere scintilla[,] but less than a preponderance."

16    *Id.* (quotation and citation omitted).  In determining whether this standard has been

17    satisfied, a reviewing court must consider the entire record as a whole rather than

18    searching for supporting evidence in isolation.  *Id.*

19    In reviewing a denial of benefits, a district court may not substitute its

20    judgment for that of the Commissioner.  If the evidence in the record "is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See Molina v. Astrue*, 674 F.3d at 1110; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity

of the enumerated impairments, the Commissioner must pause to make an

assessment of the claimant's "residual functional capacity."  Residual functional

capacity ("RFC"), defined generally as the most that the claimant can still do in a

work setting despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1);

416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv);

416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the

analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and work experience.  *Id.*  If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Molina v. Astrue*, 674 F.3d at 1111; *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

ALJ'S FINDINGS

Plaintiff applied for Title II Disability Insurance Benefits on June 22, 2009, and Title XVI Supplemental Security Income payments on July 13, 2009, Tr. 129-38, 152-55, alleging a disability onset date of July 23, 2008.  Tr. 152.  Plaintiff was 40 years old on his alleged disability onset date, Tr. 129, and 42 years old on the date of the administrative law judge's ("ALJ") decision, Tr. 22.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 69-72, 77-89.  He requested a hearing by an ALJ, Tr. 90-91, and on October 28, 2010, he appeared, accompanied by counsel and testified at the hearing.  Tr. 33-64.  Thereafter, the

ALJ found Plaintiff was not disabled through November 10, 2010, as the ALJ

found Plaintiff could perform his past relevant work as a short order cook.  Tr. 27-

28.

The Appeals Council denied review, Tr. 1-4, making the ALJ's decision the

Commissioner's final decision subject to judicial review.

ISSUES

Plaintiff raises three contentions for review: 1) that the ALJ erroneously

relied on the testimony of a medical expert over the opinions of examining sources;

2) that the ALJ did not properly consider nor reject Plaintiff's testimony regarding

his symptoms; and 3) that he is more limited from a psychological standpoint than

what the ALJ determined.  ECF No. 15 at 8.

The Commissioner contends he supported the final decision in this matter

with substantial evidence and it is free of any harmful legal error.

DISCUSSION

**A. The ALJ's Reliance on the Medical Expert**

Plaintiff contends the ALJ did not properly set forth specific and legitimate

reasons for rejecting the opinions of Dr. Gray and Dr. Hume.  ECF No. 15 at 11,

13.

If the opinion of a treating or examining physician is uncontradicted, an ALJ

may reject it only by offering "clear and convincing reasons that are supported by

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

On the other hand, in the case of a contradicted opinion, as we have here, "an ALJ

may reject the testimony of an examining, but non-treating physician, in favor of a

nonexamining, nontreating physician when he gives specific, legitimate reasons for

doing so, and those reasons are supported by substantial record evidence." *Lester*

*v. Chater*, 81 F.3d 821, 831 (9th Cir. 2005) (*quoting Roberts v. Shalala*, 66 F.3d

179, 184 (9th Cir. 1995) (upholding ALJ's decision to reject examining

psychologist's functional assessment that conflicted with his own written report

and test results); *accord Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).

However, "[t]he opinion of a nonexamining physician cannot by itself constitute

substantial evidence that justifies the rejection of the opinion of either an

examining physician or a treating physician. *Lester*, 81 F.3d at 831 (other

contradictory evidence includes laboratory reports, medical reports, and claimant's

testimony).  To the extent that an examining physician's opinions are based upon

the claimant's subjective complaints, the ALJ may cite the unreliable nature of the

claimant's complaints as a reason for rejecting the examining physician's opinion.

*See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A

physician's opinion of disability [which is] premised to a large extent upon the

claimant's own accounts of his symptoms and limitations may be disregarded

1    where those complaints have been properly discounted.") (internal quotations and

2    citation omitted).

3        Plaintiff boldly states, "Dr. Gray, of the Northwest (sic) Washington

4    Medical Group had been providing treating care to Mr. Wilder from at least April

5    9, 2007 through September 1, 2010.  The ALJ's reason for rejecting Dr. Gray's

6    opinion was that he did not check Mr. Wilder's blood sugars on August 11, 2009."

7    ECF No. 19 at 1-2.  The Court has thoroughly reviewed the file and Plaintiff's

8    statements are not supported by the record.  Dr. Gray saw Plaintiff once and cannot

9    be categorized as anything other than an examining physician, not a treating

10   physician.  See Tr. 250-51.  Counsel knows the difference and the Court does not

11   appreciate the obfuscation of facts by poorly worded assertions.  While Northeast

12   Washington Medical Group has been treating Plaintiff from April 2007 to

13   September 2010, Tr. 264-346, 382-88, 392-428, substantial evidence in the record

14   supports the ALJ's finding that Plaintiff's primary care providers were Dr. Hume

15   and Teresa Zilka, ARNP, for his diabetes.  Tr. 23.

16       While the ALJ observed that Dr. Gray did not check Plaintiff's blood sugar

17   level on the only day that he saw him, that is not the only reason for discounting

18   Dr. Gray's unadorned conclusion that Plaintiff presented as "a severity rating of 4"

19   associated with markedly limited.  Indeed, the ALJ gave quite detailed reasons for

20   discounting this examining physician's conclusion.  Tr. 26-27.  With respect to the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

blood sugar levels, the ALJ observed, "Dr. Gray based this opinion on laboratory results drawn by Dr. Hume showing blood sugar of 456; however, Dr. Gray did not indicate when these blood sugars were drawn and Dr. Gray did not do a blood sugar test on the day of the evaluation to determine the claimant's current level." Tr. 26. Plaintiff maintains that "Dr. Gray did, in fact, verify [Plaintiff's] blood sugar level as noted by the chart notes," citing Tr. 250. ECF No. 19 at 2. Again, Plaintiff obfuscates the facts. Dr. Gray may well have verified the 456 reading, but that correlated with the tests occurring over two months earlier on June 5, 2009, not Plaintiff's most recent test of July 31, 2009, showing a less elevated blood sugar level of 119. *See e.g*., Tr. 303. In the meantime, Dr. Hume was treating Plaintiff with metformin and his blood sugar levels were reduced significantly. Tr. 305-11. Dr. Hume was so successful that by February 8, 2010, she wrote, "DIABETES, UNDER SIGNIFICANTLY BETTER CONTROL. I do not think diabetes is going to limit what kind of work he can do." Tr. 388 (emphasis in original).

Finally, Dr. Gray qualified his level 4 severity rating by indicating that it was a rating "for the short term and should be markedly improved over a period of six months to a year if he is successful in losing the weight." Tr. 251. Moreover, Dr. Gray's opinion is not inconsistent with the ALJ's determination that Plaintiff could perform light work, Dr. Gray opined that, "he would then be able to do work

in some sheltered workshop kind of environment where *very heavy labor* was not involved." *Id.* (emphasis added). The ALJ gave specific, legitimate reasons for discounting Dr. Gray's conclusion and those reasons are supported by substantial evidence in the record.

Plaintiff contends Dr. Hume's residual functional capacity assessment dated February 8, 2010, should be accepted. Dr. Hume opined, "[f]or back pain I would give him a MODERATE SEVERITY. I think he could [d]o sedentary work without difficulty but I think he probably would be limited to about 6 hours a day." Tr. 388 (emphasis in original). Dr. Hume also concluded that Plaintiff's diabetes would not limit what kind of work he could do. *Id.*

The ALJ provided detailed reasons for rejecting Dr. Hume's ultimate conclusion that Plaintiff was limited to sedentary work for 6 hours a day. Tr. 27. Significantly, the ALJ noted that Dr. Hume was Plaintiff's treating physician, but she performed a very cursory physical evaluation on the day she performed the State DSHS functional capacity assessment. Tr. 27, 383-88. Dr. Hume did not indicate any limitations due to Plaintiff's weight and provided extremely little objective evidence to support her sedentary work opinion. *Id.* Dr. Hume's narrative explanation mostly related Plaintiff's subjective complaints of pain and Plaintiff's subjective assessment of his abilities on the day of the evaluation. *Id.*

The ALJ rejected the "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms" as not credible to the extent they were inconsistent with the functional capacity to perform light work.  Tr. 23. Plaintiff initially raised this as an issue, but did not otherwise brief or argue any particular aspect of this finding by the ALJ.

Substantial evidence in the record supports the ALJ's findings that the objective medical evidence does not support the extent of Plaintiff's complaints and the record is replete with examples of activity inconsistent with Plaintiff's complaints.  Tr. 23.  For instance, as discussed above, the objective record shows that Plaintiff's diabetes is under control with medication, proper diet and exercise. *Id.*   Additionally, the objective record shows that Plaintiff's back pain has been adequately controlled by pain medication, allowing him to perform activities such as working, exercising, and housework.  *Id*.  In October 2009, Plaintiff reported that his pain medication was working well for him, he was able to shovel the driveway and walkway and play on the trampoline with his roommate's children. Tr. 24, 276.  In November 2009, Plaintiff reported that while on his pain medication he was able to play with his children and exercise.  Tr. 24, 269.  By December 2009, Plaintiff reported he was exercising, had made some lifestyle changes and was working at a bakery for which his pain medication allowed him to get through the day.  Tr. 24, 265.  By April 2010, Plaintiff reported exercising on a

1  regular basis, using his elliptical trainer, walking his dogs, and using his 4-wheeler.

2  Tr. 25, 405.  By June 2010, Plaintiff reported that he was using his elliptical

3  trainer, lifting weights, and will be swimming in the lake over the summer.  Tr. 25,

4  413.  Plaintiff had a setback from lifting a heavy object in June 2010, but by

5  August 9, 2010, his exacerbated back pain had completely resolved.  Tr. 25, 422.

6  The ALJ rejected the state agency's determination that Plaintiff was capable of

7  medium exertion work and detailed the reasons why the medical consultant, Dr.

8  Brovender's assessment that Plaintiff was capable of light work was correct.

9  Tr. 26.

10        All considered, the ALJ gave clear and convincing reasons that are

11  supported by substantial evidence in the record for not fully accepting the residual

12  functional capacity conclusion of Dr. Hume.

13  **B. The ALJ's Rejection of Plaintiff's Symptom Statements**

14        Plaintiff contends the ALJ did not properly consider nor reject Plaintiff's

15  testimony regarding his symptoms.  ECF No. 15 at 8.  As discussed infra, the

16  Plaintiff initially raised this but did not otherwise brief or argue the issue.  To the

17  extent Plaintiff has not already waived the issue for failing to provide substantive

18  argument, and as explained infra, the ALJ properly made a credibility finding

19  based on the entire record.

20  ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    **C.  The ALJ's Determination of Plaintiff's Psychological Limitations**

2        Plaintiff contends that he is more limited from a psychological standpoint

3    than what the ALJ determined.  ECF No. 15 at 8.  Plaintiff contends that Renee

4    Thompson, Psy.D., opined that Plaintiff would have "moderate impairment in

5    social and occupational functioning, as well as difficulty interacting with

6    coworkers and supervisors."  *Id*. at 15.  However, as the ALJ found and the record

7    fully supports, Dr. Thompson did not feel it necessary to diagnose the Plaintiff

8    with any mental health impairment, indeed Plaintiff's mental status examination

9    was unremarkable.  Tr. 19, 347-52.

10        Clinical Psychologist Dennis Pollack, Ph.D., diagnosed Plaintiff with pain

11    disorder with both psychological factors and general medical condition.  Tr. 436.

12    On a checklist, Dr. Pollack indicated Plaintiff had mostly no limitation to mild

13    limitation in almost all areas of functioning except, he has marked limitations in

14    performing activities within a schedule, maintaining regular attendance, and being

15    punctual within customary tolerances and completing a normal workday and

16    workweek without interruptions from psychologically based symptoms and

17    performing at a consistent pace without an unreasonable number and length of rest

18    periods.  Tr. 437-39.  Dr. Pollack's reasoning for checking these boxes was

19    provided in his incorporated written report.  Tr. 439.  The ALJ concluded that Dr.

20    Pollack gave no reason for these marked limitations.  Tr. 20.  The Court has

reviewed the entire record and agrees.  The ALJ discussed each of Dr. Pollack's

findings and specifically explained why they were not supported by the record:

> Dr. Pollack stated in the narrative report that the claimant's
> personality testing revealed an individual who is preoccupied with
> physical complaints.  Such people tend to be anxious and depressed
> and they are hopeless and despondent; yet the claimant has not
> reported any such symptoms.  He has not sought any mental health
> treatment and he has not taken any psychotropic medications.  It was
> further stated that such people may use drugs or alcohol to help cope
> with their problems, but there is no indication in the record that the
> claimant had drug or alcohol problem.  Moreover, the treatment
> record is replete with examples of activities of daily living that
> suggest the claimant is capable of sustaining regular work. . . . In
> addition, there is no suggestion in the treatment records that the
> claimant is unable to maintain[] regularly scheduled appointments,
> which suggests he is able to maintain[] regular attendance and being
> punctual.

Tr. 20.  The Court observes that Dr. Pollack's report curiously claims people with

this profile "usually have good work histories."  Tr. 435.  In any event, the ALJ

provided detailed and specific reasons for rejecting Dr. Pollack's generalities

attributed to people presenting with similar profiles, because the record contains

substantial evidence supporting the ALJ's conclusion that Plaintiff did not possess

those attributes.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

> 1.  Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

> 2.  Defendant's Motion for Summary Judgment, ECF No. 16, is
>
>     **GRANTED**.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

3.  The hearing set for January 10, 2014, is **VACATED.**

The District Court Executive is hereby directed to file this Order, enter Judgment accordingly, furnish copies to counsel, and **CLOSE** this file.

**DATED** this 1st day of February, 2013.



THOMAS O. RICE
United States District Judge